## H. E. JOHNSON, Appellant, v. OSCAR ROSENQUIST, Respondent.

(175 N. W. 215.)

**Mortgages — effect of obtaining mortgage under duress — evidence of duress in execution of mortgage.**

  The defendant was sued for $15,000 damages for seduction. He was a single man. He offered to marry the girl and did do so. Prior to the time of the marriage he gave a note to the attorneys who brought the action for $2,500, secured by a mortgage on certain land. The note and mortgage were for attorneys' fees. For the reasons stated in the opinion the note and mortgage

are *held* to be without consideration and to have been procured by duress. The trial court found that the note and mortgage were procured by duress, and his judgment is right and is affirmed.

Opinion filed June 28, 1919. Rehearing denied October 31, 1919.

Appeal from judgment of the District Court of Divide County, *Leighton,* J.

Affirmed.

*Greene & Stenerson,* for appellant.

"A female upon whom rape is committed may maintain an action to recover damages for the injury sustained." 33 Cyc. 1521; Hough v. Iderhoff, 69 Or. 568, 139 Pac. 931, Ann. Cas. 1918A, 247; Watson v. Taylor, 35 Okla. 768, 133 Pac. 922.

*Geo. P. Homnes,* for respondent.

"Written securities extorted by means of threats of prosecution for criminal offenses of which the party threatened was guilty in fact, but which were in no manner connected with the demand for which compensation was sought, may be avoided." 9 Cyc. 447; Thompson v. Niggley, 53 Kan. 664, 26 L.R.A. 803, 35 Pac. 290.

Courts of equity relieve a party when he does an act or makes a contract when he is under the influence of extreme terror, or apprehension short of duress; for in cases of this sort he has no free will, but stands *in vinculis.* 1 Story, Eq. Jur. § 239; Whelan v. Whelan, 3 Cow. 537; Sears v. Schafer, 1 Barb. 408, 6 N. Y. 272; Howell v. Ranson, 11 Paige, 538.

If one party acts under oppression, injustice, hardship, undue influence, or great inequality of age, or condition, although he may be *in delicto,* he is not *in pari delicto* and may have relief in equity. 1 Story, Eq. Jur. § 300; Phalen v. Clark, 19 Conn. 421; Pinckton v. Brown, 4 Jones, Eq. 494; Freelove v. Vole, 41 Barb. 318; Sanford v. Sornborger, 41 N. W. 1102.

GRACE, J. An appeal from the judgment of the district court of Divide county, Leighton, Judge.

This is an action to foreclose a certain real estate mortgage executed by the defendant to plaintiff, and which covers and describes in the complaint three quarter sections of land. The mortgage was given

to secure a certain $2,500 note. The answer is that the note and mortgage are without any consideration, and were procured by the plaintiff from defendant by duress. It appears that one Mayme Aulman in part of the years 1914 and 1915 was employed by the plaintiff as a domestic servant in his home. She was at that time under the age of eighteen years. The defendant was at that time an unmarried man about thirty-seven years of age. On or about the 29th day of October, 1915, Mayme Aulman, while a single woman and under the age of eighteen years, gave birth to a child of which the defendant is the father. The father of Mayme Aulman procured Johnson and Meilke, attorneys at law at Ryder, to bring an action against the defendant for damages. That action was commenced on or about the 16th day of November, 1915. It was for the sum of $15,000. In that action Mayme Aulman appeared as plaintiff by her guardian *ad litem,* Henry Aulman. It was commenced by the service of a summons and complaint which were drawn up by the plaintiff, or some employee of his firm. The complaint is very short and simple, being composed of barely two pages of double-spaced typewriting; the plaintiff's partner, Meilke, made one trip to Crosby and plaintiff made one trip to Minot. The plaintiff claims to have given some advice in the matter. The services of plaintiff, as disclosed by the record, including whatever service was rendered by Meilke, were of an exceedingly meager character. The plaintiff's partner, Meilke, went to Crosby in the month of November, 1915. While there he showed to Geo. P. Homnes, then county attorney of Divide county, the pleadings in the action brought against Johnson. There was at that time some conversation had between Meilke and Mr. Homnes relative to defendant's criminal liability, and Meilke asked Mr. Homnes at that time that if a complaint charging the defendant with rape were presented and filed if he would approve the issuance of a warrant. Mr. Homnes told him that if the facts were as stated he would be obliged to do so. Meilke then went out to see the defendant for the purpose of effecting a settlement of the action for damages. Mr. Homnes then told Meilke that if his (Meilke's) purpose in procuring a warrant was to use the state's attorney's office as a club that he (Homnes) did not favor the proposition. At the time Meilke went out to see the defendant he took with him the sheriff of Divide county, who served the summons and complaint in the damage action. The testi-

mony shows that on the 20th of November, 1915, Meilke went out from Crosby to see the defendant, that a conversation was had by the defendant and Meilke with reference to settlement of the damage case. Such conversation was had before the service of the papers by the sheriff. Defendant claims that Meilke told him that in case he did not make settlement that he would enforce the law, that he had a charge of seduction against the defendant, but that he would not enforce the law on a seduction charge providing defendant settled the matter at that time. At that time the defendant gave to Meilke a note for $1,000 as a guaranty that he would appear in Crosby the following day. The defendant did go to Crosby, and while there consulted the state's attorney, Mr. Homnes, and from him learned that he was subject to imprisonment. The defendant at that time settled by giving five notes aggregating $5,000. These notes were afterwards destroyed at the telephone office at Crosby, North Dakota. They were burned, it appears, for the reason that plaintiff herein did not wish to consent to such settlement. He claims that he had no authority to make the settlement, and that he would not, under the circumstances of the case, consent to the settlement, and told Meilke to come home on the next train. The defendant and Meilke both came to Ryder, and were at the plaintiff's office. At about this time Meilke and the defendant went to see Mayme Aulman at her home and to see her parents. The defendant wishing to make a proposal of marriage to her and to get Mayme Aulman's and her parents' consent to said marriage. The trip was made to the Aulman home and the consent to the marriage was obtained all around. There is some testimony to the effect that while at the Aulman home the defendant agreed to pay the attorneys' fees fixed at $2,500. Mayme Aulman and defendant and plaintiff herein went to Minot after the trip to the Aulman home, and the defendant and Mayme Aulman were there married. The defendant executed note and mortgage in question to the plaintiff while at Ryder, but the mortgage was not recorded. The defendant finally, after some‧ negotiation, gave the plaintiff check for $2,500 on the Security Bank of Noonan, North Dakota. The check was dated November 24, 1915. At the time of giving the check the defendant procured the return of the $2,500 note and mortgage. Thereafter defendant stopped payment on said check. The present action was begun to have mortgage

in question declared a lien upon the land described therein, and to foreclose the same, and to sell the land to satisfy the note for $2,500, interest, costs, etc. The trial court has found as a fact that Johnson and Meilke induced the defendant by threats of prosecution for rape to settle said cause of action for $2,500, said amount representing attorneys' fees claimed by Johnson and Meilke for their services in bringing such action for and on behalf of Mayme Aulman, and that said amount was demanded by them as a consideration for withdrawing and discontinuing said action against the defendant; that the defendant gave the plaintiff, Johnson, a note for said $2,500, secured by the mortgage in question. After careful examination of the entire record it is clear there is abundant evidence to sustain the findings of fact of the court above referred to. That the mortgage and note in question were procured by duress there is not the least doubt, and for this reason the note and mortgage are each absolutely null and void and of no force or effect. It is also further quite evident that there is in fact no consideration for either the note or the mortgage. There is evidence, also, that prior to the time when summons and complaint were served upon the defendant he had in good faith offered to marry Mayme Aulman. He testified to various offers to marry her. He did marry her. Under our statute an offer in good faith by a single person to marry one whom he has seduced, or if in fact he does marry her, the prosecution for seduction is abated, and we think after such an offer of marriage or marriage there could be no action for damages.

The action for damages was thereby abated. We think that on the grounds of public policy such action, especially after the marriage, should be abated in such case. The wrong has, to a large degree, been righted. That is, the defendant has done that which he should do in order to right the wrong. If the defendant married Mayme Aulman it would seem that the action for damages was at an end. Taking all the facts as they exist into consideration, and the fact that defendant has married Mayme Aulman, and the further fact that plaintiff has done a very small amount of work in the bringing of said action, we are quite convinced that there is no consideration for the note and mortgage in question. At the least, there is insufficient consideration. We have carefully considered all the errors assigned and find nothing that would justify a reversal of the judgment appealed from. The judg-

ment appealed from is affirmed. The respondent is entitled to statutory costs on appeal.